UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CANDICE RENEA CANNON,

    Plaintiff,

v.                                                       Case No. 8:21-cv-2589-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Social Security Income (SSI) and Disability Insurance Benefits (DIB). After careful review and with the benefit of oral argument, the Court reverses the Commissioner's decision and remands the case to the Social Security Administration (SSA).

I.

    The Plaintiff was born in 1984, has at least a high school education, and has past relevant work experience as a nurse's assistant and home care giver. (R. 364, 1283). In late 2017, the Plaintiff applied for SSI and DIB, alleging disability as of March 2016 due to migraines, depression, back problems, bipolar disorder, and

anxiety in crowded areas. (R. 364–65, 384–85). The SSA denied the Plaintiff's applications both initially and on reconsideration. (R. 382, 402, 427, 447).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2019. (R. 35–72, 474–75). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 35, 39–67). A vocational expert (VE) also testified. (R. 67–72).

In a decision issued in March 2019, the ALJ found that the Plaintiff was not disabled. (R. 11–29). The Plaintiff sought review of that decision in federal court, which resulted in the matter being remanded for further consideration. (R. 1335–37). On remand, the ALJ held another hearing, at which the Plaintiff was again represented by counsel and again testified on her own behalf. (R. 1292, 1297–1304). A VE testified again as well. (R. 1304–07).

In a decision handed down in May 2021, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in March 2016; (2) had the severe impairments of anxiety, obesity, bipolar disorder, reactive airway disease, and degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform a

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

2

reduced range of light work subject to various limitations, including—of relevance here—a restriction to simple, routine, and repetitive tasks; and (5) based upon the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs. (R. 1270–85). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 1285).

The Appeals Council denied the Plaintiff's request for review. (R. 1260–66). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

3

§ 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress*

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff raises five challenges on appeal: (1) the ALJ did not properly consider certain medical opinions and prior administrative findings; (2) the ALJ's RFC determination and hypothetical to the VE did not account for all of the Plaintiff's mental limitations; (3) the ALJ erred by failing to identify and resolve a discrepancy between the VE's testimony and the Dictionary of Occupational Titles (DOT);[4] (4) the ALJ wrongly disregarded a prior letter from the SSA; and (5) the appointment of the

---

[4] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.  The DOT is published by the Department of Labor and "is used by the Commissioner . . . to adjudicate benefit applications by claimants." *Viverette*, 13 F.4th at 1311 (citing 20 C.F.R. § 416.966(d)(1)).

former SSA Commissioner who was responsible for resolving the Plaintiff's SSI and DIB applications was constitutionally defective.[5] For the reasons discussed below, the Court finds that the Plaintiff's third challenge has merit and alone warrants remand.

A.

As noted above, at step five of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant is able to perform'" despite her impairments. *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c) ("[T]o support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do . . . ."). To satisfy this burden, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the DOT. 20 C.F.R. §§ 404.1566(d), 416.966(d). The Regulations also permit the Commissioner to predicate her decision at step five on information supplied by a VE. *Id.* at §§ 404.1566(e), 416.966(e); *Phillips*, 357 F.3d at 1240. "A [VE] is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

---

[5] The Court has reorganized the Plaintiff's challenges for purposes of its analysis, including by subdividing one of those challenges into two separate claims of error.

"When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined . . . the claimant has will be able to secure employment in the national economy." *Id*. Although the ALJ may rely on the VE's response to such hypotheticals, the ALJ has an "affirmative obligation" pursuant to Social Security Ruling (SSR) 00-4p to identify any "'apparent' conflict" between the VE's testimony and the DOT and to resolve it. *Washington*, 906 F.3d at 1362 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). As the Eleventh Circuit noted in *Washington*, "this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT." *Id*.

An "apparent conflict" under SSR 00-4p is "more than just a conflict that is made apparent by the express testimony of the VE." *Id*. at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id*. at 1366.

The ALJ's duty to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party. *Id*. at 1363. "The failure to properly discharge this duty means that the ALJ's decision . . . is not supported by substantial evidence." *Id.* at 1362.

7

B.

In this case, the ALJ engaged in a colloquy with the VE as to whether the Plaintiff could engage in jobs that were present in the national economy other than her past relevant work. (R. 1305–06). In addressing the ALJ's inquiries, the VE asserted that an individual with the Plaintiff's age, education, work experience, and RFC could perform the representative occupations of photocopy machine operator, housekeeping cleaner, and mail clerk. *Id*. The VE also testified that the number of jobs nationally for each of these positions was 10,000 for photocopy machine operator, 221,000 for housekeeping cleaner, and 13,000 for mail clerk. *Id*. The VE did not state, however, whether this testimony comported with the DOT, nor did the ALJ ask that question. *Id*.

In his decision, the ALJ simply recited the VE's testimony at step five and then stated that "[p]ursuant to SSR 00-4p, . . . the [VE's] testimony [was] consistent with the information contained in the DOT . . . since the [VE]'s testimony [was] based on [the VE's] education, training, and professional experience and there [was] no contradictory evidence suggesting that it [was] inconsistent." (R. 1284). The ALJ also summarily added that "[b]ased on the testimony of the [VE]," the Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 1285).

The Plaintiff now argues there is an apparent discrepancy—unresolved by the ALJ—between the VE's testimony that the Plaintiff could engage in the mail clerk occupation and the qualifications for this position as set forth in the DOT. (Doc. 16).

8

In particular, the Plaintiff notes that the mail clerk job has a reasoning level of three,[6] *id.*, which necessitates that the holder of the job be able to "[a]pply [a] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations," DOT #209.687-026, 1991 WL 671813 (G.P.O. Jan. 1, 2016). The Plaintiff maintains that these requirements do not cohere with VE's testimony that the Plaintiff could carry out the duties and responsibilities of the mail clerk job despite her limitation—as determined by the ALJ—to simple, routine, and repetitive tasks. (Doc. 16).

The Commissioner does not meaningfully dispute that the VE erred in failing to identify and resolve this evident discrepancy. Nor could she validly do so under the governing Eleventh Circuit precedent. *See Viverette*, 13 F.4th at 1317 ("We hold . . . that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level [three] reasoning[.]").

The fact that the ALJ breached his duty to address this apparent conflict, however, "is not the end of the matter." *Id*. at 1317. Even though the mail clerk position cannot be considered a viable occupation for the Plaintiff for purposes of the Court's analysis here, the Commissioner insists that the ALJ's mistake was harmless because the ALJ identified two other jobs—photocopy machine operator and

---

[6] Reasoning levels measure a claimant's ability to engage in certain basic functions related to education and direct that the claimant be capable of carrying out instructions and performing mental tasks. DOT, App'x C (4th ed. 1991), 1991 WL 688702. Reasoning levels range from one to six, with one being the lowest and six being the highest. *Id.*

housekeeping cleaner—that the Plaintiff could purportedly perform. (Docs. 16, 23). The Plaintiff disagrees that the ALJ's error was harmless and asserts that remand is necessary instead. (Docs. 16, 24).

Both parties cite *Viverette* to buttress their respective positions. (Docs. 16, 23, 24). In *Viverette*, the Eleventh Circuit found that the ALJ did not properly address an apparent conflict between the claimant's RFC and the positions the VE testified the claimant could perform. *Viverette*, 13 F.4th at 1317. The occupations identified by the VE and the number of jobs nationally for each of these positions were as follows: document preparer (104,000 jobs), final assembler (7,000 jobs), and check weigher (14,000 jobs). *Id*. at 1313.

While accounting for the fact that the evident discrepancy effectively eliminated the document preparer job on appeal, the Commissioner in *Viverette* asserted—and the district court determined—that this error was harmless because the claimant could still work as a final assembler or a check weigher. *Id*. at 1317. The Eleventh Circuit disagreed, stating that it could not conclude based upon the record before it "that the ALJ's failure to address the apparent conflict as to the document preparer position was harmless." *Id*. at 1318.

The Eleventh Circuit provided three reasons for its conclusion, two of which are pertinent here. First, the court observed that it could not simply "'disregard the [ALJ's] error . . . on the grounds that no conflict in fact existed.'" *Id*. (quoting *Washington*, 906 F.3d at 1366). In other words, the court could not resolve the evident inconsistency for the ALJ.

10

Second, the court noted that in the ALJ's decision:

> The ALJ referenced th[e VE's] testimony collectively and concluded that [the claimant was] "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." But [the ALJ] apparently treated the three occupations (one of which [the court] assume[d was] off the table) cumulatively for purposes of the "significant numbers" determination, for [the ALJ] did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs.

*Id*. (internal citation omitted). The court then added that given that "over eighty percent of the jobs presented to the ALJ" did not comport with the claimant's restrictions, it was "hesitant to make any factual determinations about whether the final assembler or check weigher positions exist[ed] in significant numbers in the national economy." *Id.*

*Viverette* seemingly forecloses the Commissioner's argument here. Akin to *Viverette*, the ALJ in this case "treated the three occupations [at issue] . . . cumulatively for purposes of the 'significant numbers' determination," and did not make separate "findings about how many jobs were available in the national economy" for each of the remaining positions. *Id.*[7] And like in *Viverette*, the ALJ's failure to make this

---

[7] The court in *Viverette* obligates an ALJ in this type of circumstance to make "specific findings" about *both* "the number of [remaining] jobs available in the national economy" and "whether those numbers were significant." *Id*. at 1319 (emphasis added). While the parties expend a great deal of effort addressing the significance finding, they do not adequately brief whether the ALJ actually rendered a

11

determination now appears to preclude meaningful review on appeal.  This is because, as the Eleventh Circuit emphasized in *Viverette*, "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]."  *Id.* (alteration in original) (quotation marks and citations omitted).  As one court elaborated in this regard:

> The finder[ ] of fact—the ALJ[ ] in this situation—[is] the one[ ] who must determine whether work a claimant can still perform exists in significant numbers in the national economy.  Only after an ALJ first makes that determination would it be appropriate for a reviewing court to evaluate whether the ALJ's finding constitutes harmless error.  In that regard, *Viverette* has not changed the scope of [a c]ourt's review.

*Cisneros v. Comm'r of Soc. Sec.*, 2022 WL 354717, at *3 (M.D. Fla. Feb. 7, 2022).

The requirement that the ALJ render such determinations is especially important since, as the *Viverette* court observed, "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation."  13 F.4th at 1318 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)).  And, on appeal, the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

A survey of the case law reveals that the Court's resolution of the harmless error analysis conforms to the approach adopted by a large majority of the other courts in this District.  *See, e.g.*, *Toonen v. Comm'r of Soc. Sec.*, 2023 WL 2446374, at *5 (M.D.

---

"specific finding" as to the number of remaining jobs available in the national economy.  The Court therefore does not decide this issue here.

12

Fla. Mar. 10, 2023) (finding that the ALJ's failure to resolve an apparent conflict was not harmless under *Viverette* because the ALJ did not make a specific finding as to whether the remaining number of jobs existed in significant numbers in the national economy); *Dionne v. Comm'r of Soc. Sec.*, 2023 WL 1452201, at *10–11 (M.D. Fla. Jan. 13, 2023) (same), *report and recommendation adopted*, 2023 WL 1441821 (M.D. Fla. Feb. 1, 2023); *Ledford v. Comm'r of Soc. Sec.*, 2022 WL 2195001, at *3–5 (M.D. Fla. June 1, 2022) (same), *report and recommendation adopted*, 2022 WL 2193158 (M.D. Fla. June 17, 2022); *Grech v. Kijakazi*, 2022 WL 485111, at *5–6 (M.D. Fla. Feb. 17, 2022) (same); *Franklin v. Comm'r of Soc. Sec.*, 2022 WL 2294062, at *4–6 (M.D. Fla. Feb. 8, 2022) (same); *Cisneros*, 2022 WL 354717, at *3 (same); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *15–16 (M.D. Fla. Dec. 16, 2021) (same), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022); *Rodriguez v. Kijakazi*, 2021 WL 6127795, at *3–4 (M.D. Fla. Nov. 2, 2021) (same), *report and recommendation adopted*, 2021 WL 6126964 (M.D. Fla. Dec. 27, 2021).

The Commissioner's attempts to convince the Court to reach a contrary conclusion are unavailing. The crux of the Commissioner's position is that the ALJ's mistake affected far fewer jobs in the aggregate than did the error in *Viverette* and that *Viverette* can be read as authorizing a reviewing court in such a circumstance to assess whether the remaining jobs (after the conflicted position is removed) are sufficiently prevalent nationwide so as to render the ALJ's error harmless. (Docs. 16, 23). In

essence, the Commissioner requests the Court to decide as a matter of law that the number of jobs identified by the VE here are "significant." *Id.*

There are a couple of problems with the Commissioner's position. To begin, in focusing exclusively on the significance determination, the Commissioner does not address whether—as discussed above—the ALJ here satisfied *Viverette*'s requirement that he make "specific findings" about *both* "the number of [remaining] jobs available in the national economy" *and* the significance of those numbers. 13 F.4th at 1319 (emphasis added).

Moreover, as to the significance finding itself, the Commissioner's approach seemingly contravenes the teachings of *Viverette* and its progeny, insofar as it requires the Court to engage in the difficult task of discerning in the first instance "what number jobs would cross the line from insignificant to significant." *Dionne*, 2023 WL 1452201, at *11 (citing *Viverette*, 13 F.4th at 1318–19). As the Tenth Circuit observed in *Allen*, "judicial line-drawing in this context is inappropriate [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." 357 F.3d at 1144 (internal quotation marks and citation omitted).[8]

---

[8] This is not to say there is no number of jobs that may ever be deemed to cross the significance threshold. To the extent such a number exists, the Court need not ascertain what the number is here for the reasons stated above.

14

The Court is likewise not persuaded by the Commissioner's alternative contention that remanding this case would be a "wasteful corrective exercise." (Docs. 16, 23). The Court acknowledges that sending this matter back to the ALJ to specify the number of photocopy machine operator and housekeeping cleaner jobs that exist individually and independently in the national economy and whether those numbers are significant "may seem like a formality." *Dionne*, 2023 WL 1452201, at *11. But the Court is constrained by the Eleventh Circuit's decision in *Viverette*. Consequently, on this record and given the particular circumstances presented, the Court finds that the Commissioner's decision is not supported by substantial evidence and that remand is thus necessary. *Viverette*, 13 F.4th at 1318 ("Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.") (citing *Allen*, 357 F.3d at 1144).

In light of the above, the Court need not address the Plaintiff's other challenges. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted). On remand, however, the ALJ must consider all the record evidence in accordance with the governing case law and the applicable regulatory provisions in evaluating the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that, on remand, the ALJ must reassess the entire record).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2023.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record